UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

MIGUEL HINOJOZA-QUINONES,

                Petitioner,

    - against -

UNITED STATES OF AMERICA

                Respondent.

--------------------------------------------------------X

**OPINION AND ORDER**

**11 Civ. 627 (SAS)**

**08 CR 242 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/1/12

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

On January 26, 2011, Miguel Hinojoza- Quinones ("petitioner" or "Hinojoza") filed this pro se motion to vacate, set aside or correct his sentence pursuant to section 2255 of Title 28 of the United States Code ("section 2255"). Hinojoza challenges his sentence on the ground that he was denied effective assistance of counsel. In particular, Hinojoza asserts that his defense counsel was ineffective for: (1) not objecting to the Court's failure to grant an additional one-level reduction in offense level for acceptance of responsibility; (2) failing to investigate the law and facts and argue for a downward departure based on petitioner's minor role in the charged drug conspiracy; (3) failing to explain the Presentence Investigation Report ("PSR") and object to inaccuracies therein; and

-1-

(4) failing to argue for a downward departure based on Hinojoza's status as a

deportable alien which makes him ineligible for early release, community

confinement, and placement in a minimum security prison.[1]   For the following

reasons, the motion is denied.

## II.    BACKGROUND

### A.    The Offense Conduct

On December 21, 2007, Hinojoza and his wife arrived at Newark

Liberty International Airport ("Newark Airport") on a flight from Bogota,

Colombia.  Hinojoza traveled with a black bag that contained approximately 1.6

kilograms of heroin hidden inside three inner panels.[2]   Upon their arrival at

Newark Airport, Hinojoza and his wife were referred for a secondary Customs

inspection.[3]   Upon inspection of their bags, a Customs and Border Protection

officer discovered a beige powder in the inner linings of the black bag, which was

---

[1]      *See* Petition for a Writ of Habeas Corpus ("Petition") at 5-6.

[2]      *See* PSR ¶ 6. The bag was given to him in Colombia by a heroin trafficking
organization the day before his flight.  Hinojoza was expecting to receive $17,000
for delivering the heroin once in the United States.  *See* Safety-Valve Proffer
Transcript ("SV Tr."),  Ex. F to Respondent's Memorandum in Opposition to
Petitioner's Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence ("Opp.
Mem."), at 115.

[3]      *See* PSR ¶ 7.

later determined to be heroin.[4]  Hinojoza was then arrested by agents of

Immigration and Customs Enforcement ("ICE") and the Drug Enforcement

Administration ("DEA").[5]  Hinojoza was read his *Miranda* rights, which he

waived, and then confessed that the black bag was his and that he knew that he was

carrying heroin.[6]  He also admitted that he had made two prior trips for the same

heroin trafficking organization.  In July 2006, Hinojoza transported roughly six

hundred grams of heroin to Miami, Florida, for which he was paid $9,600.[7]  In July

2007, Hinojoza traveled from Bogota, Colombia to Newark Airport with two

kilograms of heroin in his luggage, for which he was paid $16,000.[8]

At his March 25, 2008 arraignment, Hinojoza expressed a desire to

plead guilty.[9]  Hinojoza's attorney requested the opportunity to "go over

---

[4]      *See id.* ¶ 8.

[5]      *See id.* ¶ 10.

[6]      *See* Opp. Mem. at 3.

[7]      *See* PSR ¶ 12.

[8]      *See id.* ¶ 13. *See also* SV Tr. at 108.

[9]      *See* Arraignment Transcript, Ex. B to Opp. Mem., at 5.  A Superseding
Indictment was filed on October 28, 2008, to include the two prior heroin
deliveries to which Hinojoza had confessed.

everything" with his client before entering a guilty plea.[10]   The Court then

deferred Hinojoza's guilty plea, explaining that,

> first your lawyer meets with the government and tries to obtain the best result possible for you. Even though I know you are going to intend to plead guilty, it shouldn't be done until the two lawyers have made the best arrangement they can. That would be good for you in the long run.
>
> So, it wouldn't be good to plead guilty today. It would be good to let the lawyers talk to each other, negotiate the best deal they can, the best arrangement they can, and then you can come in and plead guilty on a day that we set.
>
> Do you understand that? The result will be better for you. Okay?[11]

Hinojoza responded "[i]f you say that would be the best, Your Honor."[12]

## B.      The Suppression Hearing

On July 25, 2007, Hinojoza moved to suppress his post-arrest

statements and a search of his cell phone, which was seized at his arrest.[13]  The

Court held a suppression hearing on August 11, 2008, where Hinojoza stated that he

had poor comprehension of English and that there was a lack of understanding

---

[10]      *See id.* at 3-5.

[11]      *Id.* at 5-6.

[12]      *Id*. at 6.

[13]      *See* PSR ¶ 18.

about what the agents were saying to him during his arrest.[14]  Further, he stated that

he was not read his *Miranda* rights, instead just signing the "Advice of Rights"

form after speaking with the arresting agents.[15]  Hinojoza also testified that he never

realized he was transporting drugs in his bag the day he was arrested, and similarly

denied making the extensive statements to which the agent had testified.[16]  The

Court denied Hinojoza's motion to suppress his post-arrest statements, but

suppressed evidence from the cell phone search.[17]

### C.    The Guilty Plea

The trial was scheduled to begin on January 5, 2009.  Just before

prospective jurors were to enter the courtroom for voir dire, Hinojoza decided to

plead guilty to the Superseding Indictment.[18]  He did so without the benefit of a plea

agreement.  Hinojoza stated that he had discussed the Sentencing Guidelines with

his attorney.[19]  The Government stated that the "worst-case" scenario for a

---

[14]    *See* Suppression Hearing Transcript, Ex. D to Opp. Mem.

[15]    *See id.* at 91-93.

[16]    *See id.*

[17]    *See id.* at 125.

[18]    *See* Plea Transcript, Ex. E to Opp. Mem., at 2.

[19]    *See id.* at 8.

Guidelines sentence would be an advisory range of 245 to 293 months of imprisonment.[20]

### D.     The Safety-Valve Proffer

On March 30, 2009, Hinojoza engaged in a safety-valve proffer, in which he provided the Government with information regarding his participation in the heroin distribution conspiracy.  Hinojoza again discussed the facts that he had already admitted in his post-arrest confession, as well as providing additional details about his participation in the drug ring.  Hinojoza testified that he was coerced and threatened into agreeing to the first two heroin trafficking trips.[21]  He acknowledged that he willingly participated in the third trip to pay off a debt that he owed.[22]

### E.     Sentencing

Hinojoza was sentenced on May 6, 2009.[23]  The Court determined a base offense level of 34 pursuant to United States Sentencing Guidelines Section 2D1.1(a)(3) and (c)(3) because Hinojoza's offense involved at least three, but fewer

---

[20]     *See id.* at 17-18.

[21]     *See* SV Tr. at 53-59, 92-95, 114-115.

[22]     *See id.* at 114-115.

[23]     *See* Sentencing Transcript ("Sent. Tr."), Ex. I to Opp. Mem.

than ten, kilograms of heroin.[24]  Because of the false testimony Hinojoza gave at the

suppression hearing, the Court imposed a two-level enhancement for obstruction of

justice pursuant to Guidelines Section 3C1.1.[25]  The Court then gave a two-level

downward departure because of acceptance of responsibility pursuant to Guidelines

Section 3E1.1(a).[26]  The Court did not grant a third acceptance point, however,

because the Government had not moved for such a reduction and because

Hinojoza's acceptance of responsibility came very late – on the morning of trial.[27]

Additionally, Hinojoza received a two-level "safety-valve" reduction pursuant to

Section 2D1.1(b)(11). [28]  The Court determined an offense level of 32 which, at

Criminal History Category I, corresponded to an advisory Guideline range of 121 to

151 months imprisonment.[29]

      The Court then gave defense counsel and the prosecutor an opportunity

to speak.  Defense counsel argued that Hinojoza should be given additional credit

---

[24]     *See id*. at 8.

[25]     *See id.*

[26]     *See id.* at 9.

[27]     *See id.* at 19.

[28]     *See id.* at 19-20.

[29]     *See id.* at 10.

for accepting responsibility.[30]   Counsel further argued that the Court should impose a lenient sentence considering that Hinojoza lacked a criminal history, had a good job in Colombia, and was just a small player in the overall drug conspiracy.[31]   The Court then assessed the relevant factors under Title 18, United States Code, Section 3553(a) and assessed the nature and circumstances of the offense.[32]   The Court concluded that a non-guideline sentence of eighty-four months imprisonment (37 months below the Guidelines range) was appropriate.[33]   Additionally, the Court imposed a four-year term of supervised release and a mandatory $100 special assessment.[34]

### F.   Procedural History

On May 21, 2009, Hinojoza filed a pro se Notice of Appeal to the Second Circuit.  The Government moved for summary affirmance on the ground that there were no non-frivolous issues to be raised on appeal.  The Second Circuit agreed with the Government and, on August 20, 2010, granted the Government's motion.  The Mandate was entered on September 21, 2010, affirming the judgment

---

[30]   *See id.* at 10-16.

[31]   *See id.*

[32]   *See id.* at 19-23.

[33]   *See id.* at 20.

[34]   *See id.*

of the district court.  Thereafter, on January 26, 2011, Hinojoza filed the instant

section 2255 motion, claiming that he received ineffective assistance of trial

counsel.

## III.    APPLICABLE LAW

### A.    Section 2255

Section 2255 permits a convicted person held in federal custody to

petition the sentencing court to vacate, set aside, or correct a sentence. A properly

filed motion under section 2255 must allege that: (1) the sentence was imposed in

violation of the Constitution or laws of the United States; (2) the sentencing court

was without jurisdiction to impose a sentence; (3) the sentence was in excess of the

maximum authorized by law; or (4) the sentence is otherwise subject to collateral

attack.[35]  Accordingly, collateral relief under section 2255 is permitted "only for a

constitutional error, a lack of jurisdiction in the sentencing court, or an error of law

or fact that constitutes 'a fundamental defect which inherently results in a complete

miscarriage of justice.'"[36]

### B.    Ineffective Assistance of Counsel

---

[35]    *See* 28 U.S.C. § 2255.

[36]    *Cuoco v. United States*, 208 F.3d 27, 29 (2d Cir. 2000) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

A petitioner seeking to attack his sentence based on ineffective assistance of counsel must: (1) show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," namely, demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[37]

When analyzing a claim that counsel's performance did not meet constitutional standards, "judicial scrutiny of counsel's performance must be highly deferential."[38] The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[39] "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[40] Constitutionally inadequate performance may be established if a habeas petitioner "shows that counsel omitted significant and obvious issues while pursuing issues that were

---

[37]   *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984).

[38]   *Id.* at 689.

[39]   *Id.*

[40]   *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Stickland*, 466 U.S. at 690).

clearly and significantly weaker."[41]  Nonetheless, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a][p]etitioner [i]s entitled."[42]  Finally, even if an attorney's performance was objectively unreasonable and unprofessional, a petitioner must still prove prejudice.[43]  There is, however, a presumption of prejudice when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."[44]  For this exception to apply, the attorney's failure "must be complete."[45]

## IV.   DISCUSSION

### A.   The Third Acceptance Point

Hinojoza argues that his defense counsel was ineffective for "not objecting to the court's failure to grant an additional level for acceptance of responsibility."[46]  Further, Hinojoza notes that he had wanted to plead guilty at the

---

[41]   *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000).

[42]   *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quotation marks and citations omitted).

[43]   *See Stickland*, 466 U.S. at 687.

[44]   *United States v. Cronic*, 466 U.S. 648, 659 (1984) (emphasis added).

[45]   *Bell v. Cone*, 535 U.S. 685, 697 (2002).

[46]   Petition at 6.

-11-

arraignment, but was advised to wait by his counsel and by the Court.[47]  The

Government argues that the third point "generally may only be issued by motion

from the Government and, as the Government made clear at Hinojoza's guilty plea

and this court agreed at sentencing, Hinojoza was not entitled to reduction for any

acceptance of responsibility because of the untimeliness of that guilty plea."[48]

> Section 3E1.1(b) of the Sentencing Guidelines provides that
> a defendant is entitled to an additional point reduction,
> beyond the two points usually awarded for acceptance of
> responsibility, if his adjusted offense level is 16 or greater
> and the defendant has
> (1) timely provid[ed] complete information to the
> government concerning his own involvement in the offense;
> or (2) timely notif[ied] authorities of his intention to enter a
> plea of guilty thereby permitting the government to avoid
> preparing for trial and permitting the court to allocate its
> resources efficiently.[49]

Hinojoza has failed to show that defense counsel's decision not to

advocate for an additional point reduction for acceptance of responsibility fell

below an objective standard of reasonableness.   Although Hinojoza had initially

requested to plead guilty at his arraignment, he did not actually plead guilty until

the day of trial, nine months later.  Further, in the interim, Hinojoza requested a

---

[47]     *See id.*

[48]     Opp. Mem. at 13.

[49]     *Liberato v. United States*, No. 99 CR 157, 2001 WL 930238, at *4
(S.D.N.Y. Aug. 16, 2001).

suppression hearing, retracted many of his post-arrest statements, and required the Government to expend time and resources on trial preparation.  His delay in pleading guilty until the last possible moment did not save the Government any resources or time preparing for trial.  Because Hinojoza's plea was untimely, he was not entitled to an additional one-level reduction for acceptance of responsibility.[50]

Therefore, there is no prejudice from defense counsel's failure to object to Hinojoza not being granted the additional acceptance point.  Moreover, the common practice is for the Government to make a motion to issue a third acceptance point, and because the Government declined to make such a motion, defense counsel's conduct cannot be considered unreasonable or prejudicial.  "Indeed, the Sentencing Commission advises that the downward adjustment is 'ordinarily' not to be granted when a defendant has received an upward adjustment for obstruction of justice,"[51] which Hinojoza was given in the instant case.  Accordingly, Hinojoza has not shown ineffective assistance of defense counsel based on counsel's failure to object to the denial of the third acceptance point.  Therefore, habeas relief on this claim is denied.

### 2.    Hinojoza's Entitlement to a Role Reduction

---

[50]    *See United States v. Patasnik,* 89 F.3d 63, 73 (2d Cir. 1996).

[51]    *United States v. DeCecco*, 467 Fed. App'x 85, 87 (2d Cir. 2012) (citing U.S.S.G. § 3E1.1, comment (n.4)).

Next, Hinjoza argues that his defense counsel was ineffective because he failed to "investigate the law and facts and argue for a downward departure based on a minor participant role in the offense."[52]  He contends that he was entitled to a role reduction as either a "minor" or "minimal" participant because he had only minimal knowledge of other actors in the conspiracy, and had no ownership in the drugs he imported.  The Government argues that Hinjoza played a vital role, flying to the United States on three separate occasions with heroin.

A downward adjustment as a "minor participant" under U.S.S.G. § 3B1.2(b)  applies whenever the defendant proves by a preponderance of the evidence that he is less culpable "as compared to the average participant in such a crime."[53]  In a drug conspiracy case, a court must evaluate "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise."[54] A "minimal participant" is a defendant who is "plainly among the least culpable of those involved in the conduct or group,"

---

[52]   Petition at 8.

[53]   *United States v. Rahman,* 189 F.3d 88, 159 (2d Cir. 1999).  *Accord United States v. Carpenter,* 252 F.3d 230, 235 (2d Cir. 2001).

[54]   *United States v. Garcia,* 920 F.2d 153, 155 (2d Cir. 1990).  *Accord United States v. Mateo*, 299 F. Supp. 2d 201, 205-06 (S.D.N.Y. 2004).

while a "minor participant" describes a defendant who is "less culpable than most other participants."[55]

Although Hinojoza argues that his counsel did not specifically request a downward departure due to his role in the drug conspiracy, counsel did in fact discuss Hinojoza's role with the Court at sentencing when requesting leniency.  Mr. Schechter stated "I do point out that like many people in these drug cases, he, of course, is a small cog in the wheel.  And in this particular case, with this particular group of drug dealers . . . [they] really destroy the lives of the drug couriers and their families."[56]  Even if defense counsel's actions could be considered unreasonable for not specifically requesting a downward departure, Hinojoza cannot show any prejudice from counsel's failure to request such a reduction.  This Court issued a below guidelines sentence that took into account Hinojoza's limited role in the drug trafficking conspiracy.[57]  I would not have given any different

---

[55]     U.S.S.G. § 3B1.2.  *Accord Carey v. U.S.*, No. 03 Civ. 5395, 2003 WL 22741515, at *3  (S.D.N.Y. Nov. 18, 2003).

[56]     Sent. Tr. at 14.

[57]     Hinojoza "had a low-level role in the drug chain, acting solely as a courier, including on one occasion carrying drugs into the country by swallowing pellets of heroin, an exceedingly dangerous thing to do.  No one who had a role of any real responsibility in a drug organization would undertake such a stupid and dangerous conduct.  Only the lowest-level people move drugs by swallowing pellets." *Id*. at 24.

sentence if counsel had requested such a reduction, as petitioner's limited role in the conspiracy was already incorporated into the sentence imposed.  Accordingly, Hinojoza's ineffective assistance of counsel claim on this ground is denied.

### 3.   Defense Counsel's Failure to Adequately Explain the PSR and Object to Its Inaccuracies

Hinojoza argues ineffective assistance because his defense counsel did not address the alleged inaccuracies in the PSR with his client or the Court.[58] Specifically, Hinojoza alleges that when he was being interviewed by the Probation Department, the interview was cut short due to a fire drill.[59]  He also states that on the advice of his counsel, he did not make a statement to the Probation Department with regard to the instant offense.  Therefore, the Probation Department used the post-arrest statements in the PSR.  However, Hinojoza explains that at the "safety-valve" proffer, he went into more detail about his involvement, how he had been threatened, and that he did not receive all of the money he allegedly made from delivering the heroin.[60]  Hinojoza argues that defense counsel failed to adequately state the inaccuracies in the PSR, namely the amount that he actually kept for himself from the payments he received, and that Hinojoza supervised other couriers

---

[58]    *See* Petition at 10-11.

[59]    *See id.* at 10.

[60]    *See id.*

-16-

in the scheme.[61]  As such, he believes he would have been entitled to a lower base offense level.

Hinojoza's insistence that his defense counsel failed to cure inaccuracies regarding the amount of money Hinojoza received from his three drug-trafficking trips is simply incorrect.  During sentencing, defense counsel raised this issue and the record accurately reflects that the Court took note of the corrected figures.[62]  Further, even if Hinojoza is correct that there is an inaccuracy regarding whether or not he oversaw other couriers, the PSR specifically stated that "based on the evidence currently available to the Government, there is not enough evidence at this time to warrant an enhancement pursuant to § 3B1.1."[63]  Because counsel did address the profit issue with the Court, and because the PSR's statement regarding Hinojoza's role supervising other drug couriers was not used to enhance the sentence recommendation, Hinojoza has failed to show that counsel's performance fell below "an objective standard of reasonableness."[64]  Nor has Hinojoza shown

---

[61]     *See id.* at 11.

[62]     *See* Sent. Tr. at 5-6.

[63]     PSR ¶ 24.

[64]     *Strickland*, 466 U.S. 668 at 693-94.

-17-

any prejudice from counsel's actions or supposed inactions.  Accordingly,

Hinojoza's ineffective assistance claim on this ground is denied.

### 4.    Defense Counsel's Failure to Alert the Court to Hinojoza's Alien Status During Sentencing

Finally, Hinojoza argues that his defense counsel was ineffective

because he failed to argue for a downward departure due to defendant's status as a

deportable alien.  Specifically, petitioner contends that he should have received a

two-level reduction because his status as a deportable alien will subject him to a

harsher term of imprisonment than that experienced by U.S. citizens because he is

ineligible for the benefits of early release, six months halfway house confinement,

and placement in a minimum security prison.[65]  Although I considered Hinojoza's

status as a deportable alien in determining his sentence, other courts have found

these factors to be an inappropriate basis for a reduction in sentence.[66]  Moreover,

Hinojoza's counsel did ask for leniency based on his status as a deportable alien in

---

[65]     *See* Petition at 11-12.

[66]     *See United States v. Restrepo,* 999 F.2d 640, 645 (2d Cir. 1993) (held that the fact that the defendant would be deported post-release and would suffer other collateral consequences not suffered by United States citizens "was not a permissible basis for [downward] departure.")  *See also Carey*, 2003 WL 22741515, at * 2 (petitioner's status as a deportable alien who would be subjected to a harsher term of imprisonment than U.S. citizens because aliens are not eligible for assignment to community corrections centers or residential drug treatment programs during incarceration was an inappropriate basis for a reduction in sentence).

his sentencing brief.[67]  Because  counsel did ask for leniency – a request the Court granted – counsel's representation cannot be considered unreasonable.  Even if counsel had not requested leniency based on his status as an alien, Hinojoza has failed to show any prejudice from any supposed deficiency.  Accordingly, Hinojoza's ineffective assistance claim on this ground is denied.

## V.    CONCLUSION

For the foregoing reasons, Hinojoza's section 2255 motion is denied.  The remaining issue is whether to grant a Certificate of Appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a constitutional right."[68]  A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the merits, but merely that reasonable jurists could debate whether "the petition should have been resolved in a different manner or that the issues presented were

---

[67]    *See* Defense Counsel's Sentencing Brief, Ex. G to Opp. Mem.

[68]    28 U.S.C. § 2253(c)(2).

were 'adequate to deserve encouragement to proceed further.'"[69]  Petitioner has made no

such showing.  Accordingly, I decline to grant a Certificate of Appealability. The Clerk

of the Court is directed to close the instant motion [Docket # 1] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           August 1, 2012

_____

[69]     *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quoting *Barefoot* v. *Estelle,*
463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)). *Accord
Middleton* v. *Attorneys Gen. of the States of New York and Pennsylvania,* 396 F.3d
207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate
whether the district court's dismissal of the petition was correct).

**-Appearances-**

**Petitioner (Pro Se):**

Miguel Engel Hinojoza-Quinones

# 90212-054
NEOCC
2240 Hubbard Road
Youngstown, OH 44505

**For Respondent:**

Michael D. Maimin
Assistant United States Attorney
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2238